IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CASE NO.1:19CR00434-001(AMD) |
| § | |
| ERIC PAULINO § | |

**SENTENCING MEMORANDUM
ON BEHALF OF ERIC PAULINO**

Eric Paulino, defendant, through counsel of record, Jeffery Greco, files the following Sentencing Memorandum setting forth all factors that the Court should consider, the type and length of sentence that is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). As a supplement to this Memorandum, Mr. Paulino further submits the following: 1) Psycho-sexual report of Dr. Richard Kreuger, M.D., 2) Eric Paulino's letter of remorse, 3) multiple letters of support from family and friends, and 4) a sentencing mitigation video, (approximately nine (9) minutes in length). The video will be provided to the Court and opposing counsel, and can also be viewed in its entirety at its permanent online link:

https://www.dropbox.com/s/sgu7rqltfkt0onm/Eric%20D1a.m4v?dl=0

It is incumbent on this Court to, "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensure." *Koon v. United States,* 518, U.S. 81, 113 (1996).

On May 24, 2022, this Court will sentence Mr. Paulino for violation of 18 U.S.C. § 2252(a)(2), 2252(b)(1), and 3551 et seq., for which he pled guilty. In addressing the sentencing

1

issues regarding Mr. Paulino, this memorandum will consider, among other things, the factors presented in 18 U.S.C. § 3553(a), including the calculations by the Unites States Probation Officer, and consideration of any downward departures and/or variances.

In this case, the United States' Sentencing Guidelines (USSG) recommend a punishment range of 151-188 months of imprisonment, with a mandatory minimum sentence of sixty (60) months in custody per 18 U.S.C. § 2252(b)(1). Mr. Paulino respectfully submits this sentencing memorandum to demonstrate to the Court why a sentence of sixty (60) months is sufficient, but not greater than necessary to comply with the sentencing objectives set out in 18 U.S.C. § 3553(a).

## APPLICATION OF 18 U.S.C. § 3553(a) SENTENCING FACTORS

In the case before this Court, the following sentencing factors must be considered when determining the type, and length of sentence that is deemed sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1. **The Nature and Circumstances of the Offense and the History and Characteristics Of the Offender**

   **(a) Nature and Circumstances of Offense**

   Mr. Paulino pled guilty to a one-count indictment with count 1 charging the Defendant with *Receipt of Child Pornography*, in violation of 18 U.S.C. § 2252(a)(2). The Presentence report accurately recounts the offenses, and there were no pre-sentence report objections lodged.

   **(b) History and Characteristics of Mr. Paulino**

   Mr. Paulino was born on April 13, 1989, in Brooklyn, NY, to Roselio Paulino and Angela Paulino. Mr. Paulino is one of two (2) children born to Roselio and Angela. He has an older

sister, Aurora, who is divorced with one (1) kid, both of whom reside with Eric's wife and children for the time being.

Mr. Paulino's parents provided a good home for both Eric and Aurora growing up. They resided in Brooklyn and Queens growing up. Eric attended, and graduated from Grover Cleveland High School in Ridgewood, Queens. Eric was close with both of his parents growing up and to this day they remain very close.

Eric's sister, Aurora, describes in her letter to the Court what a loving, caring brother and uncle Eric is to her and her child;

> *"My son's father was not present during such difficult moments and my brother assumed the role of a devoted brother and uncle in ways that still elicit a tearful eye till this day. His loyalty, selflessness, and support really does not know any limitations and I am eternally grateful to have him as my brother and as my best friend."*

While Aurora is keenly aware of exactly what Eric has been charged with and pled guilty to, at no point in time has she ever felt that her child was in danger with Eric around him.

Eric graduated from college with a B.A. in Psychology, and obtained his Master's Degree in Special Education.

Eric is married with two (2) children. Eric met his wife, Gabriela, in high school Chemistry class in November 2006. They began dating and they married on their 10-year anniversary, getting married in November 2016. Gabriela writes in her letter,

> *"Eric does complete me. Eric was everything I wasn't and I was everything he needed also and we balance each other out. Eric and I have truly learn(sp!) from each other and continue to learn from each other."*

3

Eric and Gabriela were blessed with two (2) children, both boys. To read the letter Gabriela wrote, and to hear her talk about Eric, even in the face of this case that he is facing sentencing for, she is adamant that he is the most dedicated and amazing father to their two (2) children. She writes,

> *"When our boys came that is truly when I fell deeply in love with Eric. The way he cares for our boys is so heartwarming to see. Eric does it all for our boys and provides all that they want but also what they truly need being loved, patience, understanding, positive reinforcement to fix bad behaviors; all these things that Eric has shown to me."*

While it is not necessarily unique to see a spouse dote on the other spouse, with a case like this, including the subject matter involved, it is not common to see a woman talk about what an amazing father and husband this person is, considering the criminal conduct their spouse engaged in. Gabriela is a rock in Eric's life; one that he will need constantly to get him through his period of incarceration, and one he knows he can count on to be waiting for him when he gets out.

However, as is typical in cases like this, it is not all sunshine and roses. Indeed, there was a very dark side to Eric; demons that he struggled with for a long time. What was the genesis of these demons? Sadly, a child's dark side typically begins as a result of childhood trauma, usually sexual trauma that they have been a victim of. This was the case for Eric. When Eric was a young boy, at the tender age of 10 years old, he was sexually molested by an older relative. This was an older cousin of Eric's. Eric was raped by his cousin who forced oral sex on him, as a young child. Eric did not know what to do or how to process what had just happened to him. Eric already was being bullied by kids who continuously called him homosexual slurs repeatedly. He had no one to turn to and no one he could talk to about this. Instead of getting help, he bottled it

up inside and tried to move on with his life. The problem is that you cannot move on with life after having suffered such trauma like a sexual assault.

Years later, Eric, still dealing with this trauma, finally decided to talk to someone about this. Since Eric's family were devout Catholics, it only made sense for Eric to go to confession and tell someone that he trusted. He knew he could tell a priest this news and the priest would make him feel better about the situation and remind him that this was not Eric's fault. Once he spoke to the priest, he thought it would be a huge weight off his chest as someone would finally know what happened to him and he would have someone he could talk to. Unfortunately, this is not how fate would have it. Instead of providing counsel and guidance to Eric at his biggest time of need, this priest turned out to be a sexual predator. This undercover monster used this fragile teenager who had confided in him that he was raped by another boy as a chance to sexually grope a teenage Eric. Eric was instantly flooded with all sorts of emotions he did not know how to process. The only thing Eric knew to do was to run out of the Church and not look back.

While he was spared from being raped by this priest, he was, unfortunately, in even worse shape than he had ever been before. Mentally, Eric was in the deepest emotional turmoil he had even been in before, and he had no idea how to get out of it.

At this time, Eric was almost 15 years old, and while he was continuously struggling with his own sexual identity, he was constantly blaming himself for being victimized on two different times by people he was supposed to be able to trust.

Many people will read this and think that Eric should have turned to his family for help. He was raised by loving, God-fearing, Parents. Eric's parents had never been bad to him. They

5

loved and cared for him very much. Unfortunately, Eric was not able to discuss this with his family for fear of being shunned, or even worse; disowned. He writes,

> *"…I felt like liking boys was a sin I needed to confess. Growing up in a religious Hispanic family that is what you hear all the time. I was so scared that my secret would come out…While my parents never made it seem they would not accept me for who I am but after hearing comments and jokes made about other people that are just like me, I couldn't risk them knowing the truth."*

Eric carried this guilt and shame with him for the remainder of his life. Over time it caused Eric to hate himself and have very low self-esteem of himself. In fact, Eric was most scared that when he was arrested, the curtain that had been hiding who Eric really was, would come crashing down for all to see. He writes,

> *"Throughout this whole process my greatest fear has become reality. The fear that people, especially those I respect and admire both professionally and personally will look and see me as I have always seen myself. A person of no self-worth and incredibly low self-esteem."*

But through years of therapy, Eric has been able to pull himself out of the depths of hell, and he sees the value that he offers those closest to him. He sees that he has self-worth and is not a terrible person just because he did a terrible thing.

Sadly, Eric has needed therapy like this for so long now. While it is a blessing that he has finally been able to receive this much needed therapy, one cannot help but wonder if things would have been different had he been treated so much sooner in life. But most importantly, Eric knows he made progress in his treatment and has a plan for combatting his demons when he is released from prison. Furthermore, he has not violated the terms of his pre-trial release in these

three (3) years he has been on bond. Perhaps most importantly, he is remorseful and fully recognizes the pain he caused.

While therapists can never pinpoint what exactly went wrong, and why an educated man with no criminal history would commit a crime like this, there are things in a person's life that can exacerbate the mental health issues that have likely developed, undetected, for years.

In 2015, Eric was diagnosed with testicular cancer. Luckily for Eric, he had a rare form of testicular cancer that actually gave him really good odds for being cured. However, in order to rid his body of cancer, doctors would have to remove his left testicle and replace it with a prosthetic that inflates to resemble that of a real testicle. Eric received the surgery and the cancer was removed. This would be a short-lived victory as Eric's prosthetic deflated. Doctors told him that he would need to undergo a subsequent surgery to have it removed and replaced with another prosthetic. This was not something that Eric had the mental strength to undergo, and as a result, he elected to forego the surgery indefinitely.

Once again Eric was in the middle of a mental health war with himself. Why had this happened to him? Why was he suffering like this yet again? Eric was a father of a 3-year-old child and he was planning on marrying Gabriela the following year. Only now, he could not perform sexually for her anymore. He was diagnosed with low testosterone, and he was suffering from depression because of the removal of his testicle and the deflation of his prosthetic. Only recently in therapy did all of these life events get brought out in the open and aired out enough for Eric to see this trail of trauma that he has been living since he was 10 years old.

Does any of that excuse the conduct he pled guilty to? No, not in the least bit. However, it finally caused all of the trauma in his life to be brought out into the open with mental health professionals who have shown him that there is a path to redemption in his life. Before he gets there, Eric must be punished for his crime, and he is fully aware of that.

Mr. Paulino is facing a mandatory minimum of five years, or sixty (60) months, incarceration as a result of his guilty plea, and he respectfully requests that he be given such a sentence for this offense because it is sufficient, but not greater than necessary, to comply with the sentencing factors found in 18 U.S.C. § 3553(a).

**2. The Need for the Sentence Imposed To Promote Certain Statutory Objectives:**

**(a) To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

Section § 3553(a)(2)(A) requires the judge to consider "the need for the sentence[1] imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Whenever a sentence exceeds that which is considered fair, or appropriate, given the nature of the offense, it tends to promote disrespect for the law, and unjust punishment follows. The objectives of § 3553(a)(2)(A) have been referred to collectively, as "retribution," which has been defined as follows:

> First, retributive, or "just deserts," theory considers only the defendant's past actions, not his or her probable future conduct or the effect that the punishment might have on crime

---

[1] The Comprehensive Crime Control Act of 1984 makes probation a sentence in and of itself. 18 U.S.C. § 3561. Probation may be used as an alternative to incarceration, provided that the terms and conditions of probation can be fashioned so as to meet fully the statutory purposes of sentencing, including promoting respect for the law, providing just punishment for the offense, achieving general deterrence, and protecting the public from further crimes by the defendant. USSG, Chapter 5, Part B – Probation, Introductory Commentary.

rates or otherwise. Second, retribution examines the actor's degree of blameworthiness for his or her past actions, focusing on the offense being sentenced. Third, the degree of blameworthiness of an offense is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent (mens rea), motives, role in the offense, and mental illness or other diminished capacity.

Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?,* 89 Minn. L. Rev. 571, 590 (February 2005).

Therefore, when examining these factors, this Court should consider the following:

1) While Mr. Paulino accepts responsibilities for his wrongdoing, his culpability is diminished based on the following:

    A) His conduct represents the first time he has been charged with a felony crime in his entire life;

    B) He accepted responsibility for his actions and chose not to fight this case; and

    C) He entered a timely plea to the charge without so much as filing a motion;

Mr. Paulino understands that the consequences of his actions, which have brought him before the Court will certainly cause him to face imprisonment and time away from his wife, children and his career as an educator is over.

Accordingly, Mr. Paulino argues that a sentence of sixty (60) months will be sufficient, but not greater than necessary to achieve the goals of 18 U.S.S.C. § 3553(a).

A sentence of sixty (60) months in this case would reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

### (b) To afford adequate deterrence to criminal conduct

Deterrence of future criminal conduct is a major goal in federal sentencing, and as such it is typically a key point of analysis at the sentencing stage.

The Sentencing Commission has previously found that, "[t]here is no correlation between recidivism and guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." *See* USSC, Measuring Recidivism at 15, http://www.ussc.gov/publicat/Recidivism_General.pdf.

Mr. Paulino is very unlikely to reoffend. We know this by the fact that many non-violent first-time offenders in federal prisons do not reoffend upon release from prison. In fact, for federal offenders charged with fraud, nearly 65% of them never reoffend. *See Recidivism Among Federal Offenders: A Comprehensive Overview* at 20, figure 8, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

In Mr. Paulino's case, however, we have even more reliable data because he was deemed a low-risk to re-offend on several scientifically accepted tests. On the Static-99R, which is arguably the most validated and thoroughly studied risk assessment instrument for sexual recidivism, Mr. Paulino scored 0 (on a scale of -3 to 12). This places him in the low-risk category for sexual recidivism. In the Child Pornography Offender Risk Tool (CPORT), Mr. Paulino had a score of 3 (on a scale of 0 to 7), placing him in the lowest risk group for sexual re-offense, involving child pornography, contact sexual crimes, or both. On the Sexual Violence

Risk-20, Mr. Paulino had only 4 of the 20 factors present, which correlates to a low risk of risk of sexual violence. On the SONAR, Mr. Paulino's scored a being 1 (on a scale which extends from the lowest score of -4 to the highest score of 14). This falls within the lowest risk category (-4 to 3). On the Level of Service/Case Management Inventory (LS/CMI), Mr. Paulino received a score of 0 out of 43 (where a higher score is associated with greater risk of re-offense).

In sum, Dr. Richard Krueger concluded that compared with individuals who are in the community, Mr. Paulino is in the .7th percentile in terms of risk, meaning that 99.3% of individuals who are offenders who are now in the community had a higher risk of re-offense and greater need for services than Mr. Paulino does. Dr. Krueger concluded that there is no indication that Mr. Paulino has ever tried to abuse or abused a minor and his risk of doing so, as well as looking at child pornography, is low according to 6 instruments used to assess such risk. Moreover, Dr. Krueger highlighted that since his arrest, Mr. Paulino has not viewed or attempted to view child pornography and he has embraced appropriate sex offender specific therapy. Dr. Krueger also noted that a recent study has concluded that neither incarceration per se nor the length of incarceration reduces the risk of recidivism for sexual crimes (Nunes et al, 2007, appended).

It should be noted that Dr. Krueger did perform two examinations on Mr. Paulino, with the first one taking place in December 2019, and the more recent one taking place in November 2021. The reason for this is due to the fact that Mr. Paulino was not entirely honest with Dr. Kruger at his initial examination and there were items that Dr. Krueger needed to go over with Mr. Paulino again, after confronting him about his perceived dishonesty. During the latter

meeting with Dr. Krueger, Mr. Paulino was forthright and open about everything. As a result of this newfound information, some of the data was changed to reflect the more recent, and honest, answers given to certain questions pertaining to future risk for reoffending. Both reports have been included for the Court to review.

A sentence of sixty (60) months would still have an effect on deterring future criminal conduct. Any lengthier prison term handed out would merely have the effect of diminishing returns, as a sentence of sixty (60) months is sufficient to deter most would-be defendants.

Mr. Paulino hasn't been imprisoned once ever in his life, outside of this case. The mere fact that he must be incarcerated for sixty (60) months in this case is sufficient enough to ensure the public is protected from any further crimes of the defendant.

This Honorable Court, after considering the need to deter Mr. Paulino from any future criminal conduct, should find that a sentence of sixty (60) months is sufficient, but not greater than necessary based on the need to provide adequate deterrence.

**(c) To Protect the Public From Future Crimes of the Defendant**

Mr. Paulino has a pornography addiction problem – and he has for some time. Mr. Paulino confronted his demons since his arrest. He enrolled in sex offender counseling with Ms. Maricruz Garcia in September 2019, and has been so engaged ever since in order to develop strategies to combat his addiction. There are people in society that the courts have a duty to protect the public from. These people have no regard for the law and break the law while harming innocent people without so much as a second guess. Sadly, no amount of incarceration

will change them, or their dangerous pattern of behavior. There is nothing that can control them outside of incarceration.

However, someone who has been charged with one (1) non-violent, non-contact felony offense in 34 years is hardly the type of person the general public is afraid of. This is the result of someone who succumbed to a pornography addiction.

Therefore, a term of sixty (60) months is sufficient, but not greater than necessary, to afford adequate deterrence to criminal conduct, while affording Mr. Paulino the opportunity to get out and care for his wife and extended family.

**(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Mr. Paulino needs continued sex offender related counseling. His life has produced a significant number of traumatic issues for Mr. Paulino that he failed to adequately address until his arrest. Mr. Paulino would benefit greatly from continuing his sex offender treatment with a counselor about these deep-rooted issues that led him to consuming child pornography. Mr. Paulino has made tremendous strides in the 3 years he has been attending therapy with Maricruz Garcia. Mr. Paulino has enjoyed the progress in treatment prior to his sentencing and he eagerly awaits the opportunity to continue his treatment when he gets to his permanent facility. Moreover, he undoubtedly will further continue his treatment when he is released.

**3.      The Kinds of Sentences Available**

In *Booker,* the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular

13

sentencing guidelines range. *Booker,* 125 S. Ct. at 756. This hereby renders the sentencing guidelines advisory. *Id.*

The offense that Mr. Paulino was convicted of is a Class C felony, 18 U.S.C. § 2252(a)(2). The statutory maximum penalty in this case is twenty (20) years in prison. There is a sixty (60) month mandatory minimum sentence. Mr. Paulino is therefore eligible for a sentence of sixty (60) months, up to the statutory maximum.

**4.      The Sentencing Range Established by the Sentencing Commission**

Mr. Paulino does not contest the guideline range as calculated in the Pre-Sentence Report. Accordingly, Mr. Paulino feels that a sentence of sixty (60) months would be sufficient, but not greater than necessary in this case.

**5.      The Need to Avoid Unwarranted Disparities**

It is incumbent on this Court to, "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the rime and the punishment to ensue." *Koon v. United States,* 518, U.S. 81, 113 (1996).

The need to avoid disparity must be considered. Despite Mr. Paulino's involvement in this case, a sentence of sixty (60) months is not only warranted, but one that is sufficient, but not greater than necessary to comply with 18 U.S.C. § 3553(a).

Accordingly, a sentence of sixty (60) months is warranted in this case to avoid an unwarranted sentencing disparity.

**6.      The need to provide restitution to any victims of the offense**

14

Pursuant to 18 U.S.C. § 3663A, and guideline 5E1.1(a)(1), restitution is mandatory. To this end, Mr. Paulino has attempted to make arrangements with the victims in this case, through their attorney(s) of record. Mr. Paulino has agreed to pay $5,000.00 in restitution to these victims, which represents the entirety of his leftover savings. By the time sentencing has commenced on May 24th, Counsel for the defense will endeavor to provide the court with an updated restitution plan. At the time of this writing, there have not been any agreed upon settlements with any of the victims.

## Conclusion

For the foregoing reasons, Mr. Paulino respectfully submits that a sentence of sixty (60) months is sufficient but not greater than necessary to comply with the statutory directives set forth in 18 U.S.C. § 3553.

Respectfully submitted this 10th day of May, 2022.

>    /s/
> Greco Neyland, P.C.
> Jeffery L. Greco
> Attorney for Mr. Paulino
> 757 3rd Ave. – 20th Floor
> New York, NY 10017
> 212-951-1300 tel.
> 212-951-1302 fax

**CERTIFICATE OF SERVICE**

      I do hereby certify that on May 11, 2022, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                                                                             /s/